IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) <br> ) <br> **NORTHWESTERN CORPORATION,** ) Chapter 11 <br> ) <br> ) Case No. 03-12872 (JLP) <br> Reorganized Debtor. ) <br> ) **Hearing Date: TBD** <br> ) **Objection Deadline: February 22, 2005** <br> ) | |

**DEBTOR'S OBJECTION TO CLAIM NUMBERS 695, 696 AND 813 FILED BY RICHARD R. HYLLAND, PURSUANT TO**
**11 U.S.C. §§ 502(b), (e) & (d) AND FED. R. BANKR. P. 3007**
[SUBSTANTIVE]

NorthWestern Corporation (the **"Debtor"** or **"NorthWestern"**), pursuant to 11 U.S.C. § 502(b), Rule 3007 of the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, hereby submits this Debtor's Objection to Claim Numbers 695, 696 and 813 filed by Richard R. Hylland (the **"Objection"**). The Debtor respectfully states as follows:

## INTRODUCTION AND JURISDICTION

1.  On September 14, 2003 (the **"Petition Date"**), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the **"Bankruptcy Code"**). On October 19, 2004, the Court entered an Order (the **"Confirmation Order"**) confirming the Debtor's Second Amended and Restated Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the **"Plan"**). On November 1, 2004, the Effective Date under the Plan occurred and the Debtor emerged from Chapter 11.

2.  This Court has jurisdiction to entertain this Objection pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and

1

ATL/1062108.6

1409. Consideration of this Objection is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief sought herein is Sections 502(b), 502(e)(1)(B) and 510(b) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure.

       3.      On or about August 2, 2004, Mr. Hylland filed his Limited Objection to Confirmation of the Debtor's First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 1793] (the "**Hylland Confirmation Objection**") which included an objection to Section 13.1 of the Plan pursuant to which this Court retains exclusive jurisdiction of all matters arising out of, and related to, the Debtor's bankruptcy case and the Plan. On October 19, 2004, the Court entered the Confirmation Order overruling Mr. Hylland's objections in their entirety, stating:

> [e]xcluding the arbitration proceedings initiated by Hylland and currently stayed, which proceedings will be permitted to proceed once the automatic stay is dissolved, the Court hereby finds that continuing jurisdiction, as provided for in the Plan, is appropriate, necessary and consistent with applicable law.

Confirmation Order, p. 19.

## BAR DATE AND PROOFS OF CLAIM

       4.      By Order dated October 10, 2003, this Court established January 15, 2004 at 5:00 p.m. (Pacific Standard Time) (the "**Bar Date**") as the deadline for creditors to file proofs of claim for each claim they assert against the Debtor that arose before the Petition Date. Notice of the Bar Date was mailed to all known creditors of the Debtor and published in numerous regional and national newspapers.

       5.      To date, approximately 1100 proofs of claim have been filed against the Debtor in this case.

2

## THE HYLLAND CLAIMS

6.  Mr. Hylland is a former Director, director and officer of NorthWestern and currently resides in Sioux Falls, South Dakota. Since 1989, NorthWestern promoted Mr. Hylland to various positions and ultimately promoted him to the positions of Director, President and Chief Operating Officer before terminating his employment for cause on or about May 6, 2003.

7.  In connection with this Chapter 11 proceeding, Mr. Hylland filed proofs of claim seeking to recover more than $30,600,000 in alleged damages (the **"Hylland Claims"**), the Hylland Claims are summarized as follows:

| Claim No. | Amount | Claim Description | Relevant Motion/Proceeding |
|---|---|---|---|
| 695 | In excess of $5,400,000 | Asserts secured claim and an unsecured priority claim for damages with regard to Mr. Hylland's participation in NorthWestern's SISP (the **"SISP Claim"**) and NorthWestern's FPP (the **"FPP Claim"**). | Mr. Hylland's claims under the SISP are subject to the Non-Qualified Motion. The FPP was amended by the Debtor and the Debtor objects to Mr. Hylland's FPP Claim in amount and to the extent such claim asserts improper administration and/or termination of the FPP. |
| 696 | in excess of $200,000 | Claims for indemnification and/or contribution | The Debtor objects to Claim 696 as set forth in the D&O Trust Claim Objection. |
| 813 | in excess of $25,000,000 | Claims for breach of Employment Agreement and damages for alleged defamation and infliction of emotional distress | Mr. Hylland's claims under his Employment Agreement and his allegations of defamation and infliction of emotional distress are subject to the Arbitration along with the Debtor's counterclaims. However, the allowance of Mr. Hylland's claims and any setoff rights the Debtor may have are subject to this Court's jurisdiction pursuant to the Debtor's Plan. |

3

## OBJECTION TO MR. HYLLAND'S CLAIMS

8. Consistent with the objections set forth in the Debtor's Second Motion (I) Authorizing Debtor to Terminate Certain NonQualified Retirement Plans Pursuant to 11 U.S.C. §§ 105(a) and 363 of the Bankruptcy Code; and (II) Objecting to and Seeking Reduction of Certain Claims Pursuant to 11. U.S.C. § 502(b)(1) [Docket No. 2598] (the "**Non-Qualified Motion**") and the Twelfth Omnibus Objection to Claims Pursuant to 11 U.S.C. §§ 502(b), 502(e)(1)(B) and Fed. R. Bankr. P. 3007 [D&O Trust Channeled Claims, Contingent Reimbursement Claims – Substantive] [Docket No. 2593] (the "**D&O Trust Claim Objection**"), both filed on or about January 13, 2005, the Debtor seeks entry of an order, pursuant to sections 502(b), (e) and (d) of the Bankruptcy Code and Bankruptcy Rules 3001 and 3007, reducing the Hylland Claims on the grounds set forth herein.

### The Non-Qualified Plan Claims – Claim Number 695

**A.    The SISP Claim**

9. Without attaching any supporting documentation proving his entitlement to a SISP Claim, Mr. Hylland estimates that the portion of his SISP Claim relating to his benefits to be in excess of $4,000,000. In addition, Mr. Hylland's SISP Claim estimates an unliquidated amount for damages resulting from the Debtor's alleged improper administration and/or amendment of NorthWestern Corporation Supplemental Income Security Plan (the "**SISP**").

10. The Debtor has objected to Mr. Hylland's SISP Claim pursuant to the Debtor's Non-Qualified Motion filed on or about January 13, 2005. As addressed in the Non-Qualified Motion, the Debtor seeks to terminate the SISP and object to all SISP claims because the majority of the participants are not providing any services for the Debtor and to reduce future costs by approximately $5,420,735.

4

ATL/1062108.6

11. The Debtor hereby incorporates by reference the Non-Qualified Motion as to Mr. Hylland's SISP Claim.

12. The present value of Mr. Hylland's plan benefit as of August 1, 2004 is approximately $622,680. Upon termination of the SISP, Mr. Hylland is to receive an allowed unsecured Class 9 claim in the amount of $622,680 in connection with the SISP.

13. For the reasons set forth above and in the Non-Qualified Motion, as to the SISP Claim, Mr. Hylland is entitled to an allowed unsecured Class 9 claim in the approximate amount of $622,680. If for some reason the SISP Claim is not resolved by the Non-Qualified Motion, the Debtor reserves its rights to further object to such claim.

**B.    The FPP Claim**

14. Mr. Hylland also asserts, again without providing any supporting documentation, an unliquidated claim for damages in excess of $1,400,000 relating to the alleged improper administration and/or termination of NorthWestern's Family Protector Plan (the "**FPP**"). The FPP Claim should be disallowed because the Debtor did not improperly administer and/or terminate the FPP. The Debtor amended the FPP to terminate any additional accruals and provide for the payment of a lump sum payment for those retiree participants under the age of 74 prior to the filing of its bankruptcy petition. On the effective date, November 1, 2004, the Debtor assumed its remaining obligations under the amended FPP.

15. The FPP was an unfunded welfare benefit plan that provided a supplemental death benefit for participants' beneficiaries. All full-time employees of the Debtor were eligible to participate in the FPP. Participants could elect to receive a severance benefit in lieu of the death benefit. NorthWestern paid death benefits in monthly installments over eighteen (18) years, while it paid severance benefits in one lump sum payment.

16. Section 8.2 of the FPP permits NorthWestern to amend or terminate the FPP at any time by an affirmative vote of its Board of Directors, provided that such amendment or termination does not affect any participant's rights to benefits that arose prior to the amendment or termination. Prior to the Petition Date, NorthWestern amended the FPP to provide a lump sum payment to any retiree participant under the age of 74. Retiree participants aged 74 and older continued to received benefits under the FPP and such participants did not receive a lump sum payment.

17. As Mr. Hylland is under the age of seventy-four (74), the Debtor tendered Mr. Hylland his lump sum payment under the FPP in the amount of $30,368 in August 2003 in accordance with the amended FPP. Mr. Hylland accepted the check in the amount of $30,368 for his lump sum payment under the FPP but has not cashed or returned the check to NorthWestern. As NorthWestern has tendered Mr. Hylland his lump sum payment under the FPP as amended, Mr. Hylland is not presently due any payments under the FPP.

18. For the reasons set forth above, the FPP was properly amended prior to the Petition Date and distributions to Mr. Hylland were properly made in accordance with the amended FPP. As such, the Debtor requests that Mr. Hylland's claim for damages in excess of $1,400,000 resulting from the alleged improper administration and/or termination of the FPP be disallowed in its entirety.

**The Indemnification Claim – Claim Number 696**

19. Mr. Hylland filed Claim Number 696 asserting claims for indemnification and/or contribution as a result of injuries, costs and expenses incurred by Mr. Hylland in various actions, lawsuits, and investigations concerning actions or inactions while and after he was employed as an officer of the Debtor.

ATL/1062108.6

20. On or about January 13, 2005, the Debtor filed its D&O Trust Claim Objection. As set forth in the D&O Trust Claim Objection, the Debtor has objected to certain claims, including Mr. Hylland's claims, on the grounds that (i) each of the claims of the Debtor's present and former officers and directors for indemnification and defense costs from the Debtor to the extent covered by the D&O Policies, as such term is used in the Plan, is subject to the D&O Trust Channeling Injunction (as defined in the Plan) and should be expunged; and (ii) each of the claims of the Debtor's present and former officers, directors, investment bankers and financial advisors seeking indemnification and defense costs from the Debtor is subject to disallowance pursuant to 11 U.S.C. § 502(e)(1)(B) on the grounds that each such claim is a contingent claim for reimbursement by an entity that is liable in conjunction with the Debtor to a third party.

21. Pursuant to the provisions of the Plan and Confirmation Order, on November 1, 2004, Mr. Hylland entered into the D&O Protected Parties Settlement Agreement and the Insurance Assignment and Funding Agreement with the D&O Trust. Consistent with the terms of the D&O Trust Channeling Injunction contained in the Plan and the Confirmation Order, and the D&O Protected Parties Settlement Agreement and the Insurance Assignment and Funding Agreement, holders of D&O Trust Claims, including Mr. Hylland, need to submit such claims to the D&O Trustee.[1]

22. Moreover, on or about April 28, 2004, NorthWestern filed a motion for an order seeking approval for the memorandum of understanding and authorizing the Debtor to enter into a stipulation of settlement [Docket No. 1169] (the "**MOU Motion**"). In connection with the memorandum of understanding, NorthWestern and Mr. Hylland entered into a separate

---

[1] Capitalized terms used in this paragraph and not otherwise defined in this Objection shall have the meaning ascribed to such terms in the Plan.

7

agreement whereby the parties agreed to release their contribution and indemnity claims in and relating to the Securities Litigation (as defined in the Plan) (the "**Hylland Agreement**"). Attached hereto as <u>Exhibit A</u> is a copy of the Hylland Agreement. On October 7, 2004, the Court issued its memorandum decision approving the MOU Motion and on October 18, 2004 entered its order authorizing the Debtor to execute any documents and take any actions necessary to consummate the memorandum of understanding and the stipulation of settlement. <u>See</u> Order Approving Memorandum of Understanding [Docket No. 2230].

    23. As set forth in detail in the D&O Trust Objection and incorporated herein, the Debtor objects to Claim Number 696 and seeks to have such claim disallowed and expunged.

**The Employment Agreement Claim and Arbitration – Claim Number 813**

    24. Mr. Hylland entered into several employment agreements with NorthWestern during his tenure with the company, the most recent being the NorthWestern Corporation Comprehensive Employment Agreement and Equity Participation Program for Richard R. Hylland, dated March 1, 2001 (the "**Employment Agreement**"). The term of the Employment Agreement was from March 1, 2001 through February 28, 2008. Mr. Hylland's employment was terminated for cause on or about May 6, 2003.

    25. In response to his termination, Mr. Hylland commenced an arbitration (the "**Arbitration**") seeking damages relating to his Employment Agreement and the termination of his employment with NorthWestern. Mr. Hylland also, on or about January 15, 2004, filed a proof of claim in the Debtor's case that has been designated claim number 813 by the Debtor's claims agent (the "**Employment Agreement Claim**"). The Employment Agreement Claim purports to be a secured claim and an unsecured priority claim, estimated to be in excess of $25 million plus interest, attorneys' fees, costs, disbursements and punitive damages.

8

26. The Arbitration was in its early stages when NorthWestern filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. As a result of the bankruptcy filing, the Arbitration was stayed pursuant to section 362 of the Bankruptcy Code. On the Effective Date, the bankruptcy stay was in effect dissolved and an arbitration case management conference was held on December 10, 2004. On or about December 13, 2004, the arbitrator issued an amended case management order. The case management order establishes procedures for discovery in the Arbitration and set the Arbitration proceeding for the weeks beginning July 11, 2005 and July 18, 2005.

27. On January 7, 2005, the District Court entered an order remanding the matter to the Bankruptcy Court for an order directing the parties to resume the previously commenced arbitration proceedings. As discussed above, a case management conference in the Arbitration was held on December 10, 2004 and the Arbitration is now moving forward, without the need for a further court order.

28. A portion of the purported claims set forth in Claim No. 813 are identical to those asserted in the Arbitration relating to: (i) damages and employment benefits resulting from NorthWestern's alleged pre-petition breach of the Employment Agreement; and (ii) damages for alleged defamation and infliction of emotional distress. The Debtor has asserted counterclaims in the Arbitration based on, among other things, Mr. Hylland's breach of fiduciary and other duties owed to the Debtor and its subsidiaries pre-petition. The Debtor reserves the right to a setoff to the extent of the amount of Mr. Hylland's liability on the Debtor's counterclaim against any amount otherwise recoverable by Mr. Hylland on the Hylland Claims.[2]

---

[2] By filing this Objection, the Debtor is not waiving, and hereby expressly reserves, all of its rights, claims and defenses relating to the ongoing dispute between Mr. Hylland and the Debtor that is the subject of the Arbitration. In addition, Section 10.6 of the Plan provides that:

9

29.  Without addressing the underlying substantive disputes between Mr. Hylland and the Debtor, which may ultimately be arbitrated in the Arbitration and upon issuance of an arbitration award considered as part of the claim allowance process over which this Court has exclusive jurisdiction, the Employment Agreement Claim is overstated on its face and should be reduced and capped at $561,000.00, pursuant to section 502(b)(7) of the Bankruptcy Code.

30.  Section 502(b)(7) of the Bankruptcy Code provides in relevant part:

> (b) [T]he court, after notice and a hearing, shall determine the amount of ... [a] claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that -...
> (7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds -
> (A) the compensation provided by such contract, without acceleration, for one year following the earlier of -
> (i) the date of the filing of the petition; or
> (ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus
> (B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates.

11 U.S.C. § 502(b)(7).

31.  It is the nature of the claim that is the relevant question under section 502(b)(7). In re Continental Airlines, Inc., et al., 257 BR 658, 665 (Bankr. D. Del. 2000). The central purpose of section 502(b)(7) is to strike a balance between creditors with long-term employment contracts resulting in large unsecured claims and other unsecured creditors, all of whom seek payment of their claims from a pool of assets which is often too meager. Id., citing

---

No Release, Discharge, Injunction as to Richard Hylland. Notwithstanding any provision to the contrary set forth in this Plan, nothing herein shall be deemed to release, discharge or otherwise affect the Debtor's or Reorganized Debtor's rights to assert Claims or Causes of Action against Richard Hylland (excluding Claims for rights of indemnification and contribution with respect to the Class Action and D&O Proceedings), or defenses to any Claims which Richard Hylland has asserted or may assert against the Debtor.

ATL/1062108.6

In re Wilson Foods Corp., 182 B.R. 278, 281 (Bankr. D. Kan. 1995); see also In re Dornier Aviation (North America), Inc., 305 B.R. 650 (E.D. Va. 2004) (section 502(b)(7) of the Bankruptcy Code is the means by which Congress seeks to protect bankrupt estates from large, sometimes exorbitant claims by employees for damages resulting from the termination of an employment contract); In re Visiting Nurse Assoc., 176 B.R. 748, 751 (Bankr. E.D. Pa. 1995) ("Most Courts which have considered this section agree it reflects congressional intent to protect the bankruptcy estate, and the claims of general unsecured creditors, from the exorbitant damages from the acceleration of long term employment contracts."); In re Lavelle, 1996 WL 226852, at *5, 1996 (Bankr. E.D. Pa. May 2, 1996) ("Code § 502(b)(7) serves a similar purpose by limiting employee damages claims, especially those of officers, owner-managers and other key-executives who had been able to exact favorable long term contracts calling for substantial remuneration."); In re CPT Corp., 1991 WL 255679, at *5 (Bankr. D. Minn. November 27, 1991) (section 502(b)(7) was intended to protect the estate from the burdensome claims of key executive employees who were able to exact high salaries and favorable terms in their employment contracts).

    32.  Section 502(b)(7) achieves its goal by drawing a sharp line between (i) claims for "unpaid compensation due under such contract, without acceleration," i.e. compensation already earned as of the termination date, and (ii) claims for amounts that are accelerated or become due by virtue of the termination. Dornier Aviation, 305 B.R. at 654. While claims that fall into the first category, if allowed, may be recovered in full, section 502(b)(7) caps the second category of claims at an amount equal to one year's compensation under the employment contract. Id.

ATL/1062108.6

33. By its own terms, Mr. Hylland's Employment Agreement Claim is for amounts that were accelerated or became due by virtue of his termination. Mr. Hylland has not asserted claims for compensation earned before his termination. Thus, the one-year cap set forth in Section 502(b)(7) clearly limits Mr. Hylland's Employment Agreement Claims, as they are in effect a claim for prospective compensation that is accelerated as a result of his termination.

34. Because Mr. Hylland's Employment Agreement Claim is subject to section 502(b)(7)'s one year cap, this claim is capped at $561,000.00, or one year's compensation under Mr. Hylland's Employment Agreement at the time of his termination of employment.

35. As to the portion of the Employment Agreement Claim which asserts claims for "tortious conduct by NorthWestern, including defamation and infliction of emotional distress," such claim is currently being heard in the Arbitration. On or about January 10, 2005, the Debtor filed counterclaims in the Arbitration based on, among other things, Mr. Hylland's breach of fiduciary and other duties owed to the Debtor and its subsidiaries pre-petition. Pursuant to the Bankruptcy Code and the Plan, the Debtor reserves the right to a setoff to the extent of the amount of Mr. Hylland's liability on the Debtor's counterclaim, against any amount otherwise recoverable by Mr. Hylland on the Hylland Claims and for review of any arbitration award that may be issued to determine compliance with the Bankruptcy Code, the Plan and the Confirmation Order as may be required in obtaining this Court's order regarding the allowed amount and treatment of Mr. Hylland's bankruptcy claims.

36. While the Arbitration is going forward, pursuant to the terms of the Plan, this Court retains jurisdiction for, among other things, hearing and determining any and all objections to the allowance of any claims against the Debtor's estate and, as necessary, to

ATL/1062108.6

liquidate any disputed claim and allowance thereof. In accordance with the Plan, if and to the extent Mr. Hylland is determined to have a recoverable claim against the Debtor following the Arbitration, the allowance and distribution, if any at all, on account of such claim are reserved for this Court.[3]

## RESERVATION OF RIGHTS

37. The Debtor reserves the right to amend, modify or supplement this Objection and to object further to the Hylland Claims on any and all additional factual or legal grounds, including if such claims are not reduced or disallowed as requested herein or if additional information regarding the disallowance or reduction of such claim is discovered upon further review thereof or through discovery pursuant to the applicable provisions of the Bankruptcy Rules.

38. The Debtor additionally reserves the right to assert avoidance actions under Bankruptcy Code sections 544 through 553 against Mr. Hylland.

## NOTICE AND PRIOR APPLICATION

39. The Notice of this Objection has been provided to: (i) the Office of the United States Trustee, (ii) counsel for the Debtor's Pre-Petition Lenders, (iii) counsel for the Debtor's Post-Petition Lenders, (iv) counsel for the Official Committee of Unsecured Creditors, (v) the Securities and Exchange Commission, (vi) the Federal Energy Regulatory Commission,

---

[3] Section 13.1 of the Plan provides that this Court shall have exclusive jurisdiction "to hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims." In overruling the Hylland Confirmation Objection, the Court held

> [e]xcluding the arbitration proceedings initiated by Hylland and currently stayed, which proceedings will be permitted to proceed once the automatic stay is dissolved, the Court hereby finds that continuing jurisdiction, as provided for in the Plan, is appropriate, necessary and consistent with applicable law.

Confirmation Order, p. 19.

13

ATL/1062108.6

(vii) the Montana Public Service Commission, (viii) the South Dakota Public Utilities Commission, (ix) the Nebraska Public Service Commission, (x) counsel for Richard R. Hylland and (xi) all parties that have requested special notice in this Chapter 11 case pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

40. This Objection complies with Del.Bankr.LR 3007-1(e). No previous request for the relief sought herein has been made to this or any other Court.

[concluded on next page]

ATL/1062108.6

## CONCLUSION

Based on the foregoing, the Debtor respectfully requests that this Court enter an Order, in the form submitted herewith:

    (i)    granting this Objection; and

    (ii)    granting such other and further relief as this Court deems just and proper.

Dated: Wilmington, Delaware
         January 18, 2005

Respectfully submitted,

PAUL, HASTINGS, JANOFSKY & WALKER LLP
600 Peachtree Street
Suite 2400
Atlanta, GA 30308
Jesse H. Austin, III
Karol K. Denniston
Telephone: (404) 815-2400

and

GREENBERG TRAURIG, LLP

_____
Scott D. Cousins (No. 3079)
William E. Chipman, Jr. (No. 3818)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
Telephone: (302) 661-7000

*Co-Counsel for NorthWestern Corporation*